UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.  4:11CV1481 TIA |
| ) | |
| MWS, LLC d/b/a FIFTEEN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment (ECF No. 27), Defendants' Motion for Summary Judgment (ECF No. 29), and Plaintiffs' Motion to Strike Exhibits to Defendants' Motion for Summary Judgment (ECF No. 32).  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

This an action for copyright infringement brought by Plaintiffs Broadcast Music, Inc. and individual copyright owners (collectively referred to as "BMI") pursuant to 17 U.S.C. § 101 et. seq. (the "Copyright Act"), against Defendants MWS, LLC ("MWS") and Mark D. Winfield ("Winfield"). (Compl. at ¶¶ 1, 3-11).  BMI is a performing rights society which licenses the right to publicly perform copyrighted musical composition works on behalf of the copyright owners of these works, including music publishing companies and independent composers.  BMI has been granted the right to license the public performance rights in 6.5 million copyrighted musical compositions, including those compositions which are alleged in the instant action to have been infringed.  (Id. at ¶ 3).  The other named Plaintiffs are the copyright owners of the musical compositions which are the subject of this action.  (Id. at ¶ 4).  MWS is a limited liability company organized under the laws of Missouri,

which operates, maintains and controls an establishment known as Fifteen ("Fifteen") in St. Louis, Missouri. (Id. at ¶ 12). MWS regularly features performances of live and recorded music. (Id. at ¶ 13). Winfield is a member of MWS with primary responsibility for the operation and management of MWS and Fifteen. (Id. at ¶ 15).

BMI alleges five claims of willful copyright infringement based on Defendants' unauthorized public performance of musical compositions from the BMI repertoire at Fifteen on December 10, 2010 and March 18, 2011. (Compl. at ¶19, Exh. A). BMI asserts that the specific acts of copyright infringement alleged in the Complaint have caused BMI damage and seeks an order of permanent injunction, statutory damages of $7,000.00 for each of the five acts of copyright infringement alleged in the complaint, costs, attorneys fees in the amount of $16,062.61, and interest on these awards.

Both Plaintiffs and Defendants have filed motions for summary judgment claiming that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Defendants have responded to Plaintiffs' motion to which Plaintiffs have replied. Plaintiffs have responded to Defendants' motion.

At the outset, the undersigned addresses Plaintiffs' Motion to Strike Exhibits to Defendants' Motion for Summary Judgment (ECF No. 29). Defendants have not filed an opposition or responsive pleading thereto. Plaintiffs request to strike the exhibits attached to Defendants' Motion for Summary Judgment, Doc. 29-1-29-6 and an Exhibit B,[1] allegedly an inaudible recording to be filed separately, on the basis they are not authenticated and admissible for purposes of the instant motion for summary judgment. See Rule 56(e) of the Federal Rules of Civil Procedure. Plaintiffs asserts that under Rule 56(e), documents submitted in connection with a motion for summary judgment must be

---

[1] A review of the court record shows that Defendants never filed Exhibit B with the Court.

authenticated by an affiant through whom the party could offer testimony at trial sufficient to establish its authenticity for admission into evidence. Rule 56(c)(4) states "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).  Plaintiffs contend that Defendants have failed to authenticate the documents and the exhibit by affidavit or otherwise.  The undersigned agrees with Plaintiffs that Defendants have failed to make an adequate showing of authenticity or admissibility with respect to these exhibits.

"To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed.R.Civ.P. 56(e).  Documents which do not meet those requirements cannot be considered." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635-36 n. 20 (8th Cir. 2000).  In light of the lack of affidavits supporting the submissions, the undersigned will strike the unauthenticated and inadmissible exhibits and will not consider the exhibits in ruling on the motions for summary judgment.

The Court begins by noting that Defendants' Motion for Summary Judgment fails to state a single uncontroverted material fact or raise any legal or factual argument that would entitle Defendants to summary judgment. This pleading includes legal arguments and conclusory statements rather than the issues of fact that the Local Rules require. Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Defendants have failed to follow Local Rule 7-4.01(E), which requires

that the moving party file "a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations" with its motion of summary judgment.  Local Rule 7-4.01(E) requires the moving party to submit a statement of uncontroverted material facts.  These facts should be set forth in separately numbered paragraphs for each fact, "indicating whether each fact is established by the record, and if so, the appropriate citations to the record."  Defendants have not provided the Court with a statement of uncontroverted material facts with adequate citations to the record.  Further, Defendants have failed to substantiate, in accordance with Rule 56, the facts they identify as entitling them to judgment.  The Court finds that the Motion for Summary Judgment submitted by Defendants does not satisfy Local Rule 7-4.01(E), and the Court will not consider Defendants' arguments in support.  See Jackson v. United States, Cause No. 1-07cv34ERW (July 29, 2008); LOL Finance Co. v. Paul Johnson & Sons Cattle Co., Inc, 758 F.Supp. 871, 877 (D.Neb. 2010) (dismissing motion for summary judgment where movant failed to comply with local rule providing that party moving for summary judgment include in brief a separate statement of material facts).

When deciding cross-motions for summary judgment, the approach is only slightly modified, as explained in International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002):  "The usual Rule 56 standard applies to cross-motions for summary judgment. ... [S]ummary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law under the familiar standards of Fed. R. Civ. P. 56(c)."  This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists not genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita, 475 U.S. at 586-87; Fed. R. Civ. P. 56(c).  Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990). When reviewing the record in connection with a pending motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute.  However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

**The Undisputed Evidence before the Court**

Viewing all facts and drawing all reasonable inferences in the light most favorable of the nonmoving party, A. Brod, Inc. v. SK & I Co., L.L.C., 998 F. Supp. 314, 320 (S.D.N.Y. 1998) the Court sets forth the following facts:

The Complaint in this action alleges five claims of copyright infringement of certain musical compositions licensed by BMI, the copyrights of which are owned by the other Plaintiffs, arising out of unauthorized public performances of those musical works.  Copies of the certificates and subsequent documentation relating to the chain of ownership of these musical compositions are attached to Howland-Kruse's Declaration.  (Decl. Howland -Kruse at ¶ 4, Exhs. A and B; Compl., Exh. A/Schedule)

Through agreements with copyright owners, BMI acquires non-exclusive public performance rights from each, and acquired such a right from each of the other Plaintiffs in this action.  (Decl. Howland-Kruse at ¶ 2; Decl. Coletta, Exh. B).  BMI grants to music uses such as owners and operators of restaurants and nightclubs, the right to publicly perform any of the musical works in BMI's repertoire by means of blanket license agreements.  (Id. at ¶¶ 2-3).

Defendants MWS, LLC and Mark D. Winfield each individually own and operate Fifteen located at 1900 Locust Avenue, St. Louis, Missouri 63103-1641.  (Walter Decl. at ¶¶ 20-21, Exh. B at ¶ 1).  Defendants regularly offer performances of live and recorded music at Fifteen.  (Walter Decl., Exh. B at ¶¶ 95, 97-98; Exh. C).

Between July 2009 and April 2011, BMI repeatedly apprised Defendants of the need to obtain permission for public performance of copyrighted music, evidenced by some twenty-three letters and sixty-six phone calls.  (Decl. Stevens at ¶¶ 3, 5, 7, 8).  BMI also sent nine letters instructing

Defendants to cease the public performance of BMI-licensed music. (Id. at ¶ 6). On two occasions, BMI representatives visited Fifteen. (Id. at ¶ 9). BMI never issued a license to any person authorizing the performance at Fifteen of any of the works alleged to have been infringed. (Id. at ¶ 4). BMI offered to grant a license for public performance of BMI-licensed musical compositions at Fifteen, but Defendants did not enter into a license agreement and continued to offer unauthorized public performance of BMI-licensed music. (Id. at ¶ 10; Howland-Kruse Decl. at ¶ 2). On July 16, 2010, BMI sent Defendants a letter instructing them to cease the public performance of BMI-licensed music. (Stevens Decl. at ¶ 6).

Fifteen continued public performances of BMI-licensed music, and public performances of songs in the BMI repertoire were documented by Emily Hughes and Dale Farris on December 10, 2010 and March 18, 2011. (Id. at ¶ 11). In the Certified Infringement Reports. Hughes and Farris identified three of the five compositions played at Fifteen on December 20, 2010 and March 18, 2011, which includes the songs that are the subject of this infringement action. (Id., Exh. A). The audio recording of the December 10, 2010 visit submitted for digital review through patented digital audio technology by Landmark Digital Services confirmed the performance of Baby Got Back. (Id. at ¶ 13, Exh. A). The audio recording of March 18, 2011 visit submitted for digital review confirmed the performance of Let It Rock and further identified the performance of Jessie's Girl and You Really Got Me, the other two of the five compositions which are alleged in the Complaint to have been performed by Fifteen. (Id.). On April 7 and 11, 2011, BMI sent Fifteen letters advising of the investigation. (Id. at ¶ 14, Exh. B). Defendants were not licensed by the Plaintiffs to publicly perform any of their musical compositions at Fifteen. (Id. at ¶¶ 4, 17; Decl. Howland-Kruse at ¶¶ 4-7).

On December 10, 2010 and March 18, 2011, Defendants operated and maintained Fifteen and had the right and ability to direct and control the activities of Fifteen. (Walter Decl., Exh. B at ¶¶ 1-2, 4-5). On December 10, 2010 and March 18, 2011, Defendant Mark D. Winfield had the right and ability to supervise the persons working at Fifteen and had a direct financial interest in Fifteen. (Id., at ¶¶ 6-7). On December 20, 2010 and March 18, 2011, Fifteen was open to the public. (Id. at ¶ 8).

## Discussion

### I. Copyright Infringement

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work. 17 U.S.C. § 106(4). To establish a prima facie case for infringement of copyright in musical compositions, a plaintiff must prove the following five elements:

(1) the originality and authorship of the compositions involved:

(2) compliance with all formalities required to secure a copyright under Title 17 United States Code;

(3) that plaintiffs are the proprietors of the copyrights of the compositions involved in the action;

(4) that the compositions were performed publicly for profit [by the defendants]; and

(5) that the defendants had not yet received permission form any of the plaintiffs or their representatives for such performances.

Lorimar Music A. Corp. v. Black Iron Grill Co., 2010 WL 3022962,  * 2-3 (W.D.Mo. July 29, 2012) (citing Collins Court Music, Inc. v. Pulley, 704 F.Supp. 963, 964 (W.D.Mo. 1988)).

"A prima facie case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." Id. In support of their Motion for Summary Judgment, BMI has submitted copies of each copyright registration certificate for each composition at issue, as well as any subsequent documentation relating to the chain of ownership of the songs and any subsequent assignments and other documents which indicate copyright ownership.[2] (Pltfs' Memo. in Support, Decl. Howland -Kruse at ¶ 4, Exhs. A and B; Compl., Exh. A/Schedule). With this evidence, Plaintiffs have proven the first three elements of the five-element test to establish infringement of copyright in musical compositions.  Id. (citing Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F.Supp. 219, 222 (E.D.Mo. 1995) (certified copies of copyright registration certificates for each of the songs at issue established validity of plaintiffs' copyrights).

Plaintiffs established the fourth element, public performance, with the Certified Infringement Reports of Dale Farris and Emily Hughes documenting the music being publicly performed at Fifteen and the audio recordings made by them. (Stevens Decl. at ¶¶ 11,12, exhibits attached).  Defendants have not rebutted this evidence, other than to challenge the estimated occupancy of Fifteen and to take issue with the musical compositions not being in keeping with the musical genre(s) appealing to their customers because of their age and musical preference. (Winfield Aff. at ¶¶ 9, 14,19, 20). "Where no contrary evidence is offered or other evidence exists to create a reasonable doubt, an investigator's unrebutted affidavit is prima facie evidence of public performance." Lorimar Music,

---

[2] Defendants' Best Evidence Argument is without merit.  Federal Rule of Evidence 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed.R.Evid. 1003.  Defendants have not raised any genuine question regarding the authenticity of the originals and so the Court rejects their argument and finds the copies attached to the Howland-Kruse declaration are properly admissible.

2010 WL 3022962, *3 (citing Cross Keys, 887 F.Supp. at 222). Because Defendants have not offered any contrary evidence, the Certified Infringement Reports satisfactorily prove Defendants publicly performed the songs at issue. 28 U.S.C. § 1746.

The fifth element, lack of authorization for the public performance of the five songs at issue by Defendants, is established and undisputed by Defendants. "To legally publicly perform copyrighted musical material one must either obtain permission to do so from the owner(s) of the copyrights or from the owner's representatives." Id. (quoting Collins, 705 F.Supp. at 965). The Stevens Declaration verifies Defendants' admission that Defendants neither entered into a BMI license agreement, nor were the performances otherwise authorized. (Stevens Decl. at ¶ 10). The undisputed evidence shows that although Fifteen was not licensed to perform songs in the BMI repertoire, Defendants continued to publicly perform copyrighted music without permission after being instructed to cease, as indicated by the Certified Infringement Report. (Id. at ¶¶ 11-14, exhibits attached thereto). For these reasons, the Court finds BMI has established a prima facie case for music copyright infringement.

## II. Relief

Plaintiffs request injunctive relief, statutory damages for each of the claims of infringement, costs, and reasonable attorney's fees pursuant to 17 U.S.C. §§ 502, 504, and 505.

### A. Injunctive Relief

17 U.S.C. § 502(a) provides that "any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." A plaintiff is entitled to a permanent injunction in a copyright action when liability has been established and there is a "substantial likelihood of future

infringements." Cross Keys Pub. Co., Inc. v. LL Bar T Land & Cattle Co., Inc., 887 F.Supp. 219, 223 (E.D.Mo.1995). Plaintiffs seek injunctive relief to prevent further unauthorized performances and copyright violations. In support, Plaintiffs note how BMI investigators logged unauthorized performance of music in the BMI repertoire after Defendants received numerous letters and calls from BMI showing Defendants did not stop playing the music in the BMI repertoire. Plaintiffs argue injunctive relief is appropriate and necessary in this case inasmuch as Defendants will likely continue to make unauthorized performance of BMI music and will continue to do so in the future. BMI seeks an injunction preventing Defendants from publicly performing music in BMI's repertoire. Defendants failed to respond to this request.

"Injunctions regularly are issued pursuant to the mandate of Section 502, because the public interest is the interest in upholding copyright protections." Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005) (citation omitted). "The Copyright Act specifically authorizes a federal court to 'grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.'" Id. at 967 (quoting 17 U.S.C. § 502(a)). In determining whether to grant a permanent injunction, the Court must consider three factors: (1) the threat of irreparable harm to the moving party; (2) the balance of harm between this harm and the harm suffered by the nonmoving party if the injunction is granted; and (3) the public interest. Id.

Inasmuch as the Court has found there to be copyright infringement, there is a presumption of the existence of irreparable harm based on this finding. See, e.g., Nat'l Football League v. McBee & Bruno's, Inc., 792 F2d. 726, 729 (8th Cir. 1986) ("Copyright law has long held that irreparable injury is presumed when the exclusive rights of the holder are infringed.") (citation omitted).

Defendants have not controverted Plaintiffs' evidence that they continue to make unauthorized performance of BMI music. Defendants have persisted in the infringing conduct and have willfully disregarded the copyrights held by Plaintiffs and have continued to perform copyrighted musical compositions without executing a licensing agreement. The harm Plaintiffs face is irreparable. It is reasonable to find that an injunction is necessary to prevent future infringement. The balance of hardships favors an injunction. There is no cognizable harm to Defendants in being enjoined from doing something that is against the law and for which they have been found to be doing. See Taylor, 403 F.3d at 968 (harm to the defendant is minimal because the defendant could continue to sell other designs in its portfolio).

Injunctions regularly issue pursuant to the mandate of section 502, because the public interest is the interest in upholding copyright protections. Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work. Taylor, 403 F.3d at 968. The public interest weighs in favor of an injunction. The general rule applies here: the public interest is in favor of upholding copyright protections and the copyright holder's exclusivity. Accordingly, the Court will grant Plaintiffs' request for injunctive relief.

**B. Statutory Damages**

Under the Copyright Act, a copyright owner may elect to recover an award of statutory damages instead of actual damages and lost profits. 17 U.S.C. § 504(c)(1). For each non-innocent infringement, the court must award "not less than $750 or more than $30,000 as the court considers just." Id. "Within these statutory limits, the assessment of damages lies within the court's sound

discretion and sense of justice." Lorimar Music, 2010 WL 3022962, *6 (quoting Halnat Pub. Co. v. L.A.P.A., Inc., 669 F.Supp. 933, 937 (D. Minn. 1987).  In awarding statutory damages, the court may consider the following factors: (1) expenses saved by defendants in connection with the infringements; (2) revenues lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent.  Casey v. Gentry, 1989 WL 128266, *4 (W.D. Mo. July 10, 1989) (citing Halnat, 669 F.Supp. at 937).  Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that "it costs less to obey the copyright laws than to violate them."  Id. (citing Music City Music v. Alfa Foods, Ltd., 616 F.Supp. 1001, 1003 (E.D. Va. 1985). "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]." Prater Music v. Williams, 5 USPQ2d 1813, 1816 (W.D. Mo. 1987).

      BMI argues the record supports a finding that Defendants deliberately violated BMI's rights. BMI contends Defendants knowingly and willfully authorized and permitted the public performance of copyrighted songs from BMI's repertoire at Fifteen in connection with the operation of this business.  As set forth in the Stevens Declaration, BMI first contacted Defendants on July 24, 2009 advising  Defendants of the need to enter into a license agreement.  Between July 2009 and April 2011, BMI sent letters and repeatedly advised them of the need to enter into a license agreement. Despite numerous letters and calls, to date,  Defendants have not executed a license agreement or paid any license fees.  Based on the uncontroverted record, Plaintiffs argue they should be awarded damages  well in excess of the statutory minimum.  For the five acts of infringement set forth in the Complaint, BMI requests a total award of $35,000, representing an award of approximately $7,000 for each of the five infringed works.  Inasmuch as Defendants have not addressed BMI's request for statutory damages, the Court will order the parties to submit supplemental briefing addressing this

issue.

### C. Attorney's Fees

17 U.S.C. § 505 provides that "in any civil action under this title, the court in its discretion may allow the recovery of full cost by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Attorney's fees are routinely awarded to prevailing plaintiffs under the Copyright Act to encourage the prosecution of copyright infringement actions. Micromanipulator Co., Inc. v. Bough, 779 F.2d 255, 259 (5h Cir. 1985) ("Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely.").

BMI argues that an attorney's fee award is appropriate in this case because Defendants' intentionally ignored their obligation under the Copyright Act and forced them into litigation to enforce their rights. Counsel for BMI has submitted a declaration setting out the number of hours spent litigating this action against Defendants, 63, and the total lodestar amount of attorney and paralegal time at $14,993.75, including the professional discount given as part of its engagement with BMI. (Walter Decl. at ¶¶ 3-13). The costs incurred through December 27, 2012 is $1,068.86, consisting of filing fees, process service fees, and legal research costs. (Id. at ¶ 14). Although BMI has submitted billing records, Defendants failed to address BMI's request for attorneys fees in any responsive pleadings. The Court will direct Defendants to submit supplemental briefing on this issue.

For the foregoing reasons, the Court finds that Defendants MWS, LLC and Mark D. Winfield jointly and severally liable for the five acts of copyright infringement for the public performance of five copyrighted musical compositions.

**IT IS HEREBY ORDERED** that BMI's Motion to Strike Exhibits to Defendants' Motion for Summary Judgment (ECF No. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that BMI's Motion for Summary Judgment (Docket No. 27) is **GRANTED** in favor of BMI and against Defendants on the issue of liability. The parties shall submit supplemental briefing on the issue of statutory damages and attorney's fees and costs as deemed appropriate.

**IT IS FURTHER ORDERED** that BMI' request for injunctive relief will be granted. Defendants are enjoined from publicly performing any of the musical works in BMI's repertoire unless Defendants execute a licensing agreement.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 29) is **DENIED.**

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this   8th    day of August, 2013.